1  Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
   Andrea Soliz (SBN 243302) *as@mckennonlawgroup.com*
2  **McKENNON LAW GROUP PC**
   20321 SW Birch Street, Suite 200
3  Newport Beach, California 92660
   Phone:  949-387-9595  |  Fax:  949-385-5165
4

5  Attorneys for Plaintiff Hamid Zehtab

6

7

8                **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

10

11  HAMID ZEHTAB,                          | Case No.:

12                       Plaintiff,        | Action Filed:

13  vs.                                    | Trial Date:

14  PRINCIPAL LIFE INSURANCE
    COMPANY; and DOES 1 through 10,        | **COMPLAINT FOR BREACH OF**
15  inclusive,                             | **INSURANCE CONTRACT AND**
                                           | **BREACH OF THE IMPLIED**
16                       Defendants.       | **COVENANT OF GOOD FAITH AND**
                                           | **FAIR DEALING**
17

18                                         | **REQUEST FOR JURY TRIAL**

19

20                                         | [Filed Concurrently With:
                                           |   -  Civil Cover Sheet;
21                                         |   -  Summons; and
                                           |   -  Certification of Interested Parties]
22

23

24

25

26

27

28

## INTRODUCTION

1.     This lawsuit is necessary because, when presented with a long-term-disability ("LTD") and Overhead Expense claim by Plaintiff Hamid Zehtab ("Dr. Zehtab") — a dentist who reported that severe pain from multiple medical conditions, including degenerative disc disease, facet joint syndrome, arthritis, bilateral wrist tenosynovitis, arm pain and numbness in his fingers, prevented him from performing the substantial duties of his occupation — Defendant Principal Life Insurance Company ("Principal") improperly delayed a decision on Dr. Zehtab's claims and then, after many months of stalling and repeated requests for documents, denied his claims based on a biased, self-serving examination.  Dr. Zehtab has been forced to cease working at his occupation as a general dentist.  The denial decision was improper and in bad faith for multiple reasons.  First, Principal failed to examine Dr. Zehtab in person, instead relying on a cursory "paper review" of his medical records.  Second, Principal wrongly determined that only medical conditions that are excluded under his disability income policy form the basis for Dr. Zehtab's disability.  Finally, the claim investigation and denial decision were arbitrary and capricious and ignored pertinent medical evidence that supported Dr. Zehtab's disability status.  These and other acts alleged below are evidence that Principal acted in bad faith to deprive Dr. Zehtab of the LTD and Overhead Expense benefits he needs to financially survive.

## THE PARTIES

2.     Dr. Zehtab is an individual who, at all times relevant, was, and is, a resident of Orange County, California and a citizen of the State of California.

-1-

Case No.:

3.     Dr. Zehtab is informed and believes, and on that basis alleges, that Principal is, and at all times relevant was, an Iowa corporation with its principal place of business in Des Moines, Iowa.  Dr. Zehtab is also informed and believes, and on that basis alleges, that Principal was an insurance company validly licensed to conduct business within the State of California and doing business in Orange County, California.

4.     Defendants Does 1 through 10, inclusive, are sued by fictitious names because their true names and capacities, whether individual, corporate, associate or otherwise, and/or their responsibility and culpability for the acts alleged herein are unknown to Dr. Zehtab at this time.  Dr. Zehtab is informed and believes, and on that basis alleges, that each defendant sued herein as "Doe" is responsible in some manner for the acts and events referred to herein.  When their true names, capacities, responsibility and culpability are ascertained, Dr. Zehtab will seek leave of this Court to amend the complaint as appropriate.

5.     Dr. Zehtab is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously named defendants was the agent, representative, co-conspirator, successor-in-interest, assignee or employee of each remaining defendant, and in doing the things alleged herein was acting within the course and scope of such agency, representation, conspiracy, assignment and employment.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 because Dr. Zehtab and Principal are citizens of different states (California and Iowa, respectively) and the amount in controversy exceeds $75,000.

-2-



7.     Venue is proper in this Court because Principal's liability to Dr. Zehtab arose in Orange County, California and Dr. Zehtab resides there.  In addition, Principal conducted extensive business in California, including Orange County, during the relevant times.

## GENERAL FACTS /ALLEGATIONS

8.     Dr. Zehtab first began working as a dentist in 1993.  In 1997, he opened his own dental practice, Zehtab Dental, in Oregon.  As part of his practice, he performed the full array of dental procedures, including implants, extensive reconstruction, complicated root canals, Invisalign treatments, full-mouth extractions and crowns.  He worked Monday through Friday, typically 60 hours per week.  His job entailed frequent twisting and angling of his neck and back to perform dental procedures on patients, and constant movement of his hands, arms and wrists to manipulate dental equipment.  Beginning in December 2015, due to increasing wrist, arm, back and neck pain and numbness in his fingers, Dr. Zehtab could no longer perform all of the substantial and material duties of his occupation. He started substantially reducing his work hours because he was unable to perform many of the dental procedures that he had previously performed.  Eventually, his pain became so severe that he could no longer operate his business and he was forced to sell his dental practice.  He sold the practice in July 2016.  Due to financial hardship, Dr. Zehtab was forced to find part-time work, working 3-4 days per week as an associate dentist performing light dentistry.  He gradually reduced his work schedule to only 2 days per week as an associate dentist performing light dentistry. During his part-time work, he was unable to perform numerous dental procedures that he previously performed.  In July 2019, because of his disability status, Dr. Zehtab was forced to cease working altogether as a dentist.

Case No.:



9. Dr. Zehtab is, and at all times relevant was, insured under LTD insurance policy no. 7839956 and Overhead Expense policy no. 7775960 (the "Policies") issued to Dr. Zehtab by Principal on July 4, 2014 and July 1, 2012, respectively.

10. Pursuant to the terms and conditions of the Policies, Dr. Zehtab is entitled to LTD and Overhead Expense benefits because, at all times relevant, he met, and continues to meet, the Policies' operative "Definition of Total Disability" and the other conditions necessary to qualify for benefits. The Overhead Expense policy states:

> Total Disability means, solely due to Injury or Sickness, you are unable to perform the substantial and material duties of Your Occupation and you satisfy the requirements of the Claim Information section. In order to be eligible for Total Disability, there must also be no reasonable job or work site modifications which would allow you to Work in Your Occupation.

The LTD Policy states:

> Total Disability means solely due to Injury or Sickness:
> During the Your Occupation Period, you are unable to perform the substantial and material duties of Your Occupation and you are not working. After the Your Occupation Period, you are unable to Work in any occupation you are reasonably suited to by your education, training and experience. Both during and after the Your Occupation Period, you satisfy the requirements of the Claim Information section . . . In order to be eligible for Total Disability, there must also be no reasonable job or work site modifications which would allow you to Work.[1]

_____

[1] Under California law, "total disability" means that the insured must be "unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way" and with reasonable continuity. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1006 (9th Cir. 2004). "Recovery is not precluded . . . because the insured is able to perform sporadic tasks, or give attention to simple or inconsequential details incident to the conduct of business . . . ." *Id.*; *Erreca v. Western States Life Ins. Co.*, 19 Cal.2d 388, 396 (1942); *see also Hecht v. Paul Revere Life Ins. Co.*, 168 Cal.App.4th 30, 32-33 (2008). Regardless of the definition of "total disability" in an own-occupation

Footnote continues on next page…

-4-

Case No.:

The Your Occupation Period is defined as to age 67 policy anniversary.

11.     The LTD Policy contains a "Regular Occupation Rider" that states that benefits will be payable under the LTD Policy if the insured meets this rider's definition of Total Disability, which reads as follows:

> Total Disability during the Your Occupation Period means, solely due to Injury or Sickness, you are unable to perform the substantial and material duties of Your Occupation and are not Working in Your Occupation and you are Working in another occupation and you satisfy the requirements of the Claim Information section of the policy.

> In order to be eligible for Total Disability under this rider, there must also be no reasonable job or work site modifications which would allow you to Work in Your Occupation.

12.     The Policies contain "Additional Exception Riders" that exclude certain conditions from coverage.  The Overhead Expense Policy contains an "Additional Exception Rider" that provides that policy benefits will not be paid for any injury to or disease of the left shoulder, including any treatment or operation therefor or complication thereof.  The LTD Policy contains an "Additional Exception Rider" that provides that policy benefits will not be paid for any injury to or disease or disorder of the spine, its muscles, ligaments, discs or nerve roots (including radiculopathy or sciatica), including any treatment or operation therefor or complication thereof, except for fractures, burns or lacerations.  The LTD Policy contains a second "Additional Exception Rider" that provides that policy benefits

---

insurance policy, "California law requires courts to deviate from the explicit policy definition of 'total disability' in the occupational policy context."  *Hangarter*, 373 F.3d at 1006.

Case No.:



will not be paid for any injury to or disease of the left or right shoulder, including any treatment or operation therefor or complication thereof.

13. The LTD Policy contains a "Cost of Living Adjustment (COLA) Rider" that provides that monthly income benefits otherwise payable under the terms of the LTD Policy will increase once per year during the continuance of a disability. The monthly income benefits will be increased by the policy's COLA factor, which is based on the CPI-U (Consumer Price Index for all Urban Consumers) up to a maximum of 3%.

14. Under the terms of the Overhead Expense Policy, Dr. Zehtab is entitled to a maximum monthly benefit of $20,000 for his Covered Overhead Expenses with a maximum aggregate benefit of $240,000. The Policy contains an elimination period of 30 days, after which benefits become payable.

15. Under the terms of the LTD Policy, Dr. Zehtab is entitled to a maximum monthly benefit of $10,000. This benefit amount is adjusted annually under the LTD Policy's "COLA Rider" and, therefore, the amount of the benefit will likely increase every year. Given Dr. Zehtab's age at the time of the onset of his disability (he was 49), the maximum benefit period under the LTD Policy is to the first policy anniversary after Dr. Zehtab turns 67, or to July 4, 2034.

16. Dr. Zehtab has met the Policies' definition of Total Disability during all relevant periods because he suffers from bilateral wrist tenosynovitis, wrist and arm pain and numbness in his fingers, all of which render him unable to perform the substantial and material duties of his occupation as a full-time dentist.



 Case No.:



17.     As clearly demonstrated from his medical records, Dr. Zehtab does not have the capacity to engage fully in his former occupation due to his severe arm and wrist pain, as well as stiffness and numbness in his extremities, including his fingers.  Dr. Zehtab's symptoms are severely aggravated by the awkward positioning involved in performing dental procedures, such as twisting his head, arms and wrists to work on a patient's teeth.  These dental procedures usually require sitting in the same position for prolonged periods of time, which Dr. Zehtab can no longer do because of his pain.  When performing these dental procedures, he experiences significant pain in his wrists any time he has to hold or squeeze a dental instrument; he also suffers from sharp, stabbing pain in his neck and back, headaches, and numbness, pain and tingling in his arms and fingers.  His pain, numbness and fatigue increase throughout the day and he is never pain-free and he is never without some numbness.  His symptoms prevent him from completing long, complicated procedures and, even with short procedures, he requires multiple breaks which prolong all of these procedures.  Because of his medical condition, Dr. Zehtab is unable to perform the substantial and material duties necessary to engage in his former occupation in the usual and customary way and with reasonable continuity.

18.     Dr. Zehtab first began experiencing pain in his wrist and numbness, pain and tingling in his arms and fingers in 2013.  Over the next few years, his symptoms became progressively worse.  They worsened in large part due to his occupation as a full-time dentist.  His job involved sitting for long periods of time (between one and four hours) and awkward positioning of his head, neck, back, arms and wrists while performing complicated dental procedures.  By December 2015, his symptoms became so debilitating that he was unable to work a full-time schedule.  He began to reduce his work hours in December 2015, but, unfortunately, this did not alleviate his symptoms.  By the spring of 2016, his condition had deteriorated to such an extent that he became unable to perform all of the substantial

and material duties of his occupation, and he was forced to sell his dental practice. He listed his dental practice for sale in the spring of 2016, and the practice was sold on July 10, 2016.

19.     After selling his practice, Dr. Zehtab took several months off work to rest, but because his family needed his financial support, he was forced to find a part-time associate dentist position.  In August 2017, he began working, performing light dentistry only.  When Dr. Zehtab sold his practice, he was initially hopeful that his condition would improve.  However, after fifteen months, he realized that his condition was not going to improve and that he could no longer engage in full-time work.  In October 2017, Dr. Zehtab filed a claim for benefits with Principal under his LTD and Overhead Expense policies.  He described the nature of his disability as neck pain, upper-back pain, arm pain and numbness in his fingers, and stated that he was unable to perform the substantial and material duties of dentistry.  In support of his claims, he submitted an Attending Physician Statement ("APS") signed by J. Thomas Forsythe, M.D.  Dr. Forsythe listed Dr. Zehtab's diagnoses as cervical and thoracic degenerative disc disease and arthritis of the spine, and his subjective symptoms as pain in the neck, shoulders and arms.  Dr. Forsythe indicated that Dr. Zehtab's objective findings included MRIs and X rays and that his restrictions had begun in July 2016 and continued to the present.  Dr. Forsythe stated that Dr. Zehtab could not work full time as a dentist and would never be able to return to work in that capacity.

20.     In his application for benefits, Dr. Zehtab listed several treating medical providers, including Dr. Forsythe (internal medicine), Robert Tatsumi, M.D. (orthopedic surgery), Robert D. Heros, M.D. (physical medicine and rehabilitation), Thomas A. Phipps, M.D. (neurology), Michael R. Van Allen, M.D. (hand surgery), Michael P. Weinstein, M.D. (orthopedic surgery), Zach Knight-



King, PAC, Lindsay Purtell, PAC and Shane Durando, PT.  Between 2013 and 2017, Dr. Zehtab regularly treated with these medical providers for his neck, back, wrist, shoulder and arm pain.

21.     On April 12, 2016, Dr. Zehtab was seen by Dr. Van Allen for an evaluation of his upper extremities.  Dr. Zehtab reported numbness and tingling in his fingers mainly in the left upper extremity.  He stated that he had had numbness and lack of sensation for quite some time.  Dr. Van Allen referred Dr. Zehtab for an MRI of the brachia plexus which was normal indicating that Dr. Zehtab's symptoms did not originate in his spine.

22.     On May 28, 2016, Dr. Zehtab underwent an MRI of the cervical spine in which his noted symptoms included pain, numbness and tingling in both arms.

23.     At evaluations with Dr. Weinstein on June 13, 2016, March 27, 2017 and February 19, 2018, Dr. Zehtab complained of numbness in his fingers.  Dr. Weinstein noted possible ulnar nerve neuropathy in his hands and discussed the possibility of further neurologic consultation.

24.     On June 24, 2016, Dr. Zehtab was seen by Dr. Phipps and reported that he had developed tingling into the small fingers on both hands.

25.     On November 4, 2016, Dr. Zehtab was seen by Dr. Forsythe and reported arm pain and numbness and tingling in his fingers.

26.     On February 8, 2017, Dr. Zehtab was evaluated at Oregon Spine Care for pain in his neck, upper back and bilateral upper extremities.  He complained of pain in his arms and numbness in his fingers.  He described his upper extremity pain

as aching, stabbing, tingling, constant and gradually worsening.  He also reported that his symptoms were worsened with movement and physical activity and improved with rest.

27.     On November 14, 2017, Dr. Zehtab was seen by Lindsay Purtell, PA-C at Spinal Diagnostics and reported pain in both arms and hands and intermittent numbness in his 5th digit bilaterally.  He stated that he had begun cutting back his hours at work which drastically improved the pain, but upon returning to work his symptoms would always return.

28.     In January 2018, as part of its claims-review process, Principal requested an in-person interview with Dr. Zehtab to discuss his claim status and current medical condition.  On January 26, 2018, Dr. Zehtab met with Principal's agent, Scott Webb, for a field interview.  He informed Mr. Webb that his medical condition precluded him from performing lengthy dental procedures, and that he could not bend his neck or manipulate his body into position to perform the essential functions of his job.  He also stated that he could no longer sit for long periods of time and that he had no plans to return to work full time.

29.     On February 7, 2018, Principal's in-house medical consultant, Janie Hendricks, D.O., a physician specializing in internal medicine, completed a brief paper review of Dr. Zehtab's claim file.  She opined, without ever having spoken to Dr. Zehtab or to any of his treating physicians and with almost no analysis, that Dr. Zehtab's current problems were "clearly from his spine" and that he had no new diagnoses between April 2014 and July 2016.  Dr. Hendricks' report was cursory and deficient and completely ignored Dr. Zehtab's symptoms related to his wrists, arms and hands.  Furthermore, Dr. Hendricks has no specialized training in orthopedic surgery or neurology and, therefore, does not have the proper expertise to

Case No.: 

give credible opinions regarding Dr. Zehtab's medical condition.  In addition, Dr. Hendricks offered no opinion as to whether Dr. Zehtab could perform his job duties, given his symptoms and restrictions.

30.     By letter dated March 1, 2018, Principal informed Dr. Zehtab that it was denying his claims under his LTD and Overhead Expense policies.  With regard to the LTD claim, Principal focused solely on Dr. Zehtab's cervical and thoracic spine issues to deny his claim, asserting that those conditions were excluded under the LTD policy's Additional Exception Rider.  Principal relied on Dr. Hendricks' opinion that Dr. Zehtab's current problems stem from his spine to conclude that his diagnoses are conditions that are excluded under the LTD policy.  As stated above, Dr. Hendricks' opinion was cursory and deficient and thus Principal never should have relied on her opinion to deny Dr. Zehtab's claim.  Furthermore, Principal completely failed to investigate or consider whether Dr. Zehtab's documented complaints of wrist pain, numbness, tingling and pain in his arms and hands, which are not excluded conditions, were independently disabling.  With regard to the Overhead Expense claim, Principal stated that it had not received certain financial information from Dr. Zehtab necessary to evaluate his eligibility under the Overhead Expense policy and, therefore, it was unable to determine if he qualified for benefits under that policy.

31.     On June 12, 2018, Dr. Zehtab was seen by his treating orthopedic surgeon, Dr. Weinstein, for a follow-up evaluation.  Dr. Weinstein noted that Dr. Zehtab was having problems working in his normal customary occupation, that he had had to modify his activities and procedures and that he was becoming very frustrated over time.  Dr. Weinstein stated that Dr. Zehtab had problems with his lower back and **both wrists** and that he had tenderness mostly on the dorsoradial

Case No.:



1  aspect of the wrists.  In Dr. Weinstein's assessment, Dr. Zehtab was suffering from

2  chronic lower-back pain, coccydynia and bilateral wrist tenosynovitis.

3

4       32.    On July 11, 2018, Dr. Zehtab was examined again by Dr. Weinstein.

5  He continued to report chronic neck pain, chronic lower-back pain and bilateral

6  wrist pain.  He reported to Dr. Weinstein that he had tried work modifications but he

7  continued to have ongoing pain with activities involving prolonged sitting and

8  leaning forward.  He indicated that he did not think he could perform capably as a

9  dentist.

10

11       33.    On November 27, 2018, Dr. Zehtab, through his counsel, submitted a

12  letter to Principal, enclosing additional evidence in support of his LTD and

13  Overhead Expense claims.  Specifically, Dr. Zehtab submitted a personal statement

14  and a certification letter dated September 6, 2018 from Dr. Weinstein, which

15  explained that Dr. Zehtab experiences debilitating wrist pain, which prevents him

16  from performing the substantial and material duties of his occupation on a full-time

17  basis.  The letter from Dr. Zehtab's counsel noted that wrist injuries were not

18  excluded under the Policies and, therefore, Dr. Zehtab's wrist condition supported

19  his total disability.  The letter also explained that while (at that time) Dr. Zehtab was

20  able to perform light dentistry on a part-time basis, he could not perform the full

21  array of dental procedures required of his occupation.  The letter further stated that

22  he first became unable to work in full-time clinical dentistry in December 2015.  At

23  that time, as a result of his disabling conditions, including his wrist and arm pain

24  and numbness in his fingers, he began cutting back on his work hours and limiting

25  his dental procedures.  From December 2015 onward, he was unable to perform the

26  substantial and material duties of his occupation as a full-time clinical dentist.  As

27  such, Dr. Zehtab argued that his total disability began in December 2015, rather than

28  July 2, 2016 as indicated in the Disability Claim Notice.  The letter explained that

Case No.:

the procedures he performed at his current part-time job were very different than the procedures he performed as a full-time clinical dentist and, therefore, he was not currently working in his own occupation and was thus eligible for benefits under the Policies due to his disabling wrist and arm pain and numbness in his fingers.

34.     In Dr. Zehtab's personal statement included with the November 27, 2018 letter, he stated that, after about 15 to 20 minutes of doing complicated dental procedures, he would experience pain in his middle back that radiated to his neck, head and the right side of his body.  The pain would shoot down his arms with tingling and burning in his arms and fingers and numbness in his fingers.  He also felt wrist pain whenever he held and maneuvered dental instruments, something he had to do for almost all of the procedures he performed.  He stated that his wrist pain would worsen as the day went by and he completed more procedures, and that he had to wear wrist guards on both wrists on his way home from work.  He explained that he could not wear the wrist guards during the day, as they interfered with the dental procedures.

35.     In Dr. Weinstein's certification letter, dated September 6, 2018, he stated that, based on his examinations of and discussions with Dr. Zehtab and a review of his medical records, he strongly believed that Dr. Zehtab was disabled and unable to perform the tasks necessary for full-time dentistry.  He noted that the procedures and positioning involved in Dr. Zehtab's occupation caused the pain in his wrists, neck and back to gradually worsen.  Dr. Weinstein stated that Dr. Zehtab experienced tingling and numbness in his little finger and down his arm and that his wrist pain intensified as his workday continued.  He reiterated that Dr. Zehtab's symptoms of wrist pain, as well as stiffness and numbness in his extremities, prevented him from working as a full-time dentist without restriction.  Dr. Weinstein concluded his letter by stating:

Case No.:

**Based on my examinations of Dr. Zehtab I can state that, without reservation, that he does not have the functional capacity to perform the full array of dental procedures on a fulltime basis . . . Dr. Zehtab was and continues to be unable to return to his previous occupation as a fulltime dentist because his pain prevents him from performing the full, necessary duties of his occupation**.

36.     The November 27, 2018 letter also included financial and occupational records that Principal had previously requested, including business and personal tax returns, W-2 forms and profit-and-loss records related to Dr. Zehtab's dental practice.  In the letter, Dr. Zehtab requested that Principal re-evaluate his claims and overturn its erroneous decision, in light of the overwhelming evidence supporting his total disability under the Policies.

37.     In January 2019, Dr. Weinstein referred Dr. Zehtab to physical therapy for his bilateral wrist pain, neck pain and back pain.  Dr. Zehtab began physical therapy at North Orange Physical Therapy in Irvine, California on January 11, 2019.  His diagnoses included bilateral wrist tenosynovitis, neck and back pain and coccydynia.  At the initial physical therapy evaluation, Dr. Zehtab reported neck and back pain ranging from 6 to 8 out of 10 on a 1-to-10 pain intensity scale, and that this pain increased with activities and prolonged mobility and interfered with his activities of daily living.  He also reported wrist pain ranging from 4 to 6 out of 10, which was increased by active range of motion and which interfered with his grip and use of his hands and wrists.  His physical therapist's plan of care included ultrasound, therapeutic exercise, electrical stimulation and manual therapy.  Dr. Zehtab was advised to attend physical therapy sessions two to three times per week for four to six weeks to treat his bilateral wrist tenosynovitis, neck and back pain and coccydynia.  He completed the treatment plan as recommended.

Case No.:

38.     On April 9, 2019, Dr. Weinstein wrote a second certification letter in support of Dr. Zehtab's disability claim.  He stated that Dr. Zehtab's wrist symptoms had not improved and that he was currently working only three days per week due to his pain and discomfort.  Dr. Weinstein reiterated his prior opinion that Dr. Zehtab does not have the functional capacity to perform the full array of dental procedures on a full-time basis.  His opinion was based on his numerous in-person examinations of Dr. Zehtab.



39.     Despite receiving sufficient information and documents to support Dr. Zehtab's claims, over the next five months Principal continued to repeatedly request additional evidence from Dr. Zehtab, which it falsely claimed was necessary to properly evaluate his eligibility for benefits.  By letters dated January 17, January 25, February 21, March 15 and April 12, 2019, Principal requested further financial and occupational records from both Dr. Zehtab and his dental business that were either not relevant to the claims, duplicative or could have been requested long ago, including various tax returns, 1099s, verification of business expenses and records of monthly earnings.  Dr. Zehtab complied to the best of his ability with each request for documents.  On April 26, 2019, Dr. Zehtab, through counsel, sent Principal a letter advising it that he had provided all financial records in his possession that were relevant to his claims and that Principal should now have all the information it needed to reconsider its denial.  The letter reminded Principal that it was in violation of California's Fair Claims Settlement Practices Regulations by improperly delaying making a decision and by constantly demanding documents and evidence that had been previously requested and provided, were either not pertinent or necessary for the determination of Dr. Zehtab's claim or that could have been requested long ago.  The letter requested that Principal cease further delay and reverse its incorrect denial decision.

Case No.:

40.     On April 30, 2019, William M. Sligar, M.D., an orthopedic surgeon hired by Principal, completed a brief paper review of Dr. Zehtab's medical records. Dr. Sligar acknowledged that, due to Dr. Zehtab's chronic neck pain, he does have limitations that could interfere with his ability to perform his job as a dentist, including no reaching above shoulder level, no work above shoulder level, no prolonged work with his head/neck held in a flexed position and no prolonged work requiring frequent rotational movements of the cervical spine.

41.     Because Dr. Sligar failed to address Dr. Zehtab's wrist problems, Principal requested a supplemental paper review, which was completed on May 6, 2019.  In his supplemental report, Dr. Sligar offered the conclusory, unsupported opinion that the diagnosis of bilateral wrist tenosynovitis was not supported and that there did not appear to be any restrictions and limitations due to this diagnosis. Dr. Sligar's opinion regarding the diagnosis of wrist tenosynovitis was one short paragraph out of his eight-page report.  Dr. Sligar failed to sufficiently explain the basis for his opinion and failed to explain how he could reach such a conclusion without examining Dr. Zehtab.  He also failed to explain how he reached his conclusion, which was in complete contradiction to the opinion of Dr. Weinstein, who had treated Dr. Zehtab in person for three years and, consequently, had gained great insight into Dr. Zehtab's medical condition and work limitations.  Dr. Sligar also never spoke to Dr. Weinstein or to any of Dr. Zehtab's other treating physicians.  Dr. Sligar offered a biased, conclusory opinion that brushed aside Dr. Zehtab's subjective reports of wrist and arm pain and numbness in his fingers and ignored or improperly minimized the vast majority of medical evidence supporting Dr. Zehtab's diagnosis of wrist tenosynovitis.  This evidence consisted of Dr. Zehtab's personal statement, physical therapy records from North Orange Physical Therapy, Dr. Weinstein's diagnosis and certification letters and a February 2, 2016 office note from Dr. Forsythe, which indicated that Dr. Zehtab had sought a referral

1   to a specialist due to bilateral wrist pain.  That Dr. Sligar was completely biased in

2   favor of Principal is also clear from the statement in his report that if Dr. Zehtab was

3   more interested in pursuing his occupation as a dentist than he is in pursuing his

4   disability claim, he would have proceeded with additional treatment options for his

5   medical condition.

6

7         42.    On May 15, 2019, Principal sent a letter to Dr. Zehtab, informing him

8   that it was denying his claim under his Overhead Expense policy.  Principal

9   erroneously claimed that Dr. Zehtab did not meet the definition of disability under

10  the terms of that policy.  Principal stated that, although it did not dispute that Dr.

11  Zehtab would have restrictions and limitations due to his spine that would prevent

12  him from working full-time as a dentist (spinal conditions are not excluded under

13  the Overhead Expense policy), it did not agree that he was totally disabled.

14  Principal appeared to base that assertion on its erroneous finding that Dr. Zehtab

15  continued to do many of the same procedures that he was doing prior to disability,

16  just in a reduced capacity.  Principal's argument that he is not totally disabled under

17  the Overhead Expense policy is clearly incorrect.  Not only did Principal fail to

18  adequately explain how or why it reached its decision, but it also failed to apply the

19  proper standard of disability to Dr. Zehtab's claim.  Under California law, "total

20  disability" means that the insured must be unable to perform the substantial and

21  material acts necessary to the prosecution of a business or occupation in the usual or

22  customary way and with reasonable continuity.  *See Hangarter v. Provident Life and*

23  *Acc. Ins. Co.*, 373 F.3d 998, 1006 (9th Cir. 2004).  The evidence in Dr. Zehtab's

24  claim file indisputably established that he could not perform the substantial and

25  material duties of his occupation in the usual and customary way.  Although he

26  continued to perform light dentistry, he could no longer complete the lengthy

27  complicated dental procedures that formed the bulk of his prior practice and, as a

28  result, he cannot perform the substantial and material duties of his occupation.  As

Case No.:

explained herein and as evidenced in the claim file, Dr. Zehtab cannot perform the full array of dental procedures required of his occupation on a full-time basis due to his medical condition.  This establishes that he cannot perform the duties of his job in the usual and customary way and with reasonable continuity, which is required in order to meet the definition of "total disability" under California law.  This also establishes that Principal's claim determination was incorrect.

43.     Principal also stated, as a basis for its denial of Dr. Zehtab's Overhead Expense claim, that it had not received all of Dr. Zehtab's requested financial records and that Dr. Zehtab had surrendered his Overhead Expense policy on July 15, 2016.  In regards to the financial records, Principal stated that it had not received Dr. Zehtab's monthly profit-and-loss statements for April 2016 through December 2016.  However, Dr. Zehtab informed Principal, via letter dated April 26, 2019, that separate profit-and-loss statements for that time period were not prepared and, therefore, those documents did not exist.  Dr. Zehtab also advised Principal that the information it sought was contained in the tax returns he had already provided to Principal.  Moreover, Principal had already received numerous financial and business records from Dr. Zehtab that supported his claim, and thus Principal certainly had sufficient information to approve the claim without the profit-and-loss statements.  Regarding Principal's attempt to argue that Dr. Zehtab's surrender of the Overhead Expense policy on July 15, 2016 somehow supports denial, this position wholly lacks merit because Dr. Zehtab's disability claim arose in December 2015 which is prior to the alleged surrender date and, when the policy was still in effect.

44.     On May 22, 2019, Principal issued another letter informing Dr. Zehtab that his LTD claim had been denied.  Principal again determined that Dr. Zehtab did not meet the definition of disability under the terms of the policy.  Principal's

Case No.:

1   decision was based on the erroneous conclusion that Dr. Zehtab's disability had

2   arisen solely due to his spine and shoulder issues.  Principal recognized that Dr.

3   Zehtab had restrictions and limitations that would prevent him from performing his

4   occupation on a full-time basis due to his spine and shoulder issues, but stated that

5   these conditions were excluded under the LTD policy.  Principal wrongly asserted

6   that Dr. Zehtab's medical documentation did not support restrictions and limitations

7   due to wrist pain that would prevent him from performing his occupation as a

8   dentist.  In reaching this conclusion, Principal relied solely on the opinion of Dr.

9   Sligar.  As discussed above, Dr. Sligar's report is deficient in many ways.

10  Principal's paper-review physician, Dr. Sligar (who never examined Dr. Zehtab or

11  spoke with him or any of his treating physicians) authored a cursory, deficient report

12  that is full of conclusory, unsupported opinions and that completely ignored Dr.

13  Zehtab's documented reports of wrist and arm pain and numbness in his fingers.

14  Therefore, it was improper for Principal to rely on his opinion.

15

16        45.    In addition, Principal applied an incorrect disability standard to Dr.

17  Zehtab's LTD claim.  In its May 22, 2019 denial letter, Principal stated that, because

18  Dr. Zehtab had continued to do many of the same procedures that he had done prior

19  to his disability date, it had reviewed Dr. Zehtab's claim under the Residual

20  Disability Rider, rather than the Regular Occupation Rider.  Under the Regular

21  Occupation Rider, an insured is totally disabled if he is unable to perform the

22  substantial and material duties of his occupation and he is not working in his

23  occupation and he is not working in another occupation.  While Dr. Zehtab was

24  working part-time in light dentistry, he met this definition because, although he was

25  working, he was not working in his regular occupation in the usual and customary

26  manner and with reasonable continuity.  As discussed herein, the procedures that he

27  performed were vastly different than the procedures he previously performed.  He is

28  and was unable to complete complicated root canals, implants, full-mouth



extractions and other lengthy procedures that he previously performed.  He was limited to simple, one-hour procedures and currently cannot even perform these. The nature of his dental practice had drastically changed such that he was no longer working in his prior occupation and, therefore, his claim should have been evaluated under the total disability standard under the Regular Occupation Rider.  Dr. Zehtab, through counsel, repeatedly advised Principal that he was not residually disabled, but rather was totally disabled under the LTD policy, based on the medical and other evidence.  Principal's failure to evaluate Dr. Zehtab's claim under the proper disability standard evidences its bad-faith claims-handling conduct.

46.     Dr. Zehtab is physically unable to work in his occupation because of his serious medical conditions.  He has severe pain in his wrists and arms and numbness in his fingers that is exacerbated by the awkward positioning involved in performing dental procedures.  He also suffers from stiffness and numbness in his arms, numbness and tingling in his fingers, and fatigue.  He is tired and distracted most of the day due to the pain and has often had to reschedule appointments, break up procedures into two appointments or forgo certain procedures altogether.  This prevents him from performing the substantial and material duties of his occupation as a full-time dentist in the usual and customary way and with reasonable continuity.

47.     Given the overwhelming medical and occupational evidence supporting Dr. Zehtab's disability diagnosis under the Policies, Principal's denial of benefits was unreasonable, without proper cause and was arbitrary and capricious.  Principal engaged in a biased and self-serving interpretation of the Policies' terms and unreasonably delayed reviewing Dr. Zehtab's claim by repeatedly requesting documents from Dr. Zehtab that either had been requested previously and provided, were not reasonably necessary to a claim determination or that could have been requested long ago.  Courts have held that an unreasonable delay in reviewing a

Case No.:



claim and making a claim decision gives rise to bad faith liability.  *See Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1237 (2008) ("A delay in payment of benefits due under an insurance policy gives rise to tort liability only if the insured can establish the delay was unreasonable."); *see also Wilson v. 21st Century Insurance Co.*, 42 Cal. App. 4th 713 (2007); *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030 (1984).

48.     Moreover, Principal ignored the ample medical evidence contained in Dr. Zehtab's claim file that establishes that he is totally disabled within the meaning of the Policies.  Instead of accepting the medical opinion of the qualified orthopedic surgeon who personally examined Dr. Zehtab over an extended period of time and was, therefore, far better suited to render credible opinions, Principal chose to deny Dr. Zehtab's LTD claim based on a deficient paper review of his medical records. Neither Principal nor its paid consultants, Drs. Hendricks and Sligar, made any attempts to distinguish or evaluate the contrary opinion of Dr. Zehtab's treating physician, Dr. Weinstein, that Dr. Zehtab was disabled due to his wrist and arm pain.  That is strong evidence that Principal acted unreasonably under the circumstances and thus acted in bad faith.

49.     Here, the weight of the evidence that existed when Principal denied the LTD claim (the treating orthopedic surgeon's opinion based on his years of in-person exams, medical records documenting wrist and arm pain and numbness in his fingers and Dr. Zehtab's statement that these conditions interfere with his job duties) was that Dr. Zehtab was totally disabled due to wrist and arm pain and numbness in his fingers, conditions that are not excluded under the LTD policy.  Principal's reliance on its deficient paper-review report, its improper delay in evaluating Dr. Zehtab's claim and its failure to engage in a thorough investigation of the claim amounts to bad faith.  Principal also failed to apply the proper standard of disability

Case No.:

to Dr. Zehtab's LTD and Overhead Expense claims.  Dr. Zehtab is totally disabled under California law because he is unable to perform the substantial and material acts necessary to the prosecution of his occupation *in the usual or customary way and with reasonable continuity*.  Principal neglected to recognize that, although Dr. Zehtab could perform short, simple dental procedures on a part-time basis, he could not perform all of the essential functions of dentistry in the usual or customary manner and with reasonable continuity and, as such, he is totally disabled from his occupation.

50.     Dr. Zehtab is now, and at all times relevant remained, "Totally Disabled" as defined in the Policies, and has now and at all times relevant convincingly demonstrated his total disability through medical records and other documents, information and correspondence.

51.     Accordingly, a dispute exists between Dr. Zehtab and Principal regarding his entitlement to LTD and Overhead Expense benefits from December 1, 2015 forward.

## **FIRST CLAIM FOR RELIEF**

For Breach of Contract

(Dr. Zehtab Against Principal and Does 1 through 10)

52.     Dr. Zehtab incorporates by reference each and every allegation set forth in each of the foregoing paragraphs, as though fully set forth herein.

53.     Dr. Zehtab and Principal entered into a valid and binding written contract, i.e., the Policies, by virtue of Dr. Zehtab having been an insured under the Policies issued by Principal to Dr. Zehtab.  The Policies obligated Principal to,



among other things, pay Dr. Zehtab disability benefits and Overhead Expense benefits should he become totally disabled within the meaning of the Policies.

54.     At all times relevant, Dr. Zehtab has been, and continues to be, totally disabled within the meaning of the Policies.

55.     Principal improperly, unreasonably, incorrectly and with willful disregard denied Dr. Zehtab's claims for benefits that were and are due and owing to him under the Policies.

56.     Dr. Zehtab fulfilled every condition and has duly performed each and every obligation he was required to perform under the terms of the Policies, and therefore is, and at all times relevant has been, entitled to payment of benefits under the terms and conditions of the Policies.

57.     Principal breached its obligations to Dr. Zehtab by failing to fulfill its obligations under the Policies, including but not limited to the obligation to pay him disability benefits, ignoring the ample medical and occupational evidence in support of his disability claims and neglecting its obligation to conduct a thorough claims examination.

58.     As a direct and proximate result of Principal's conduct as alleged herein, Dr. Zehtab has suffered and will continue to suffer monetary and non-monetary damages, in an amount to be determined at trial, but which exceeds $75,000, including but not limited to loss of his disability insurance benefits and pre-judgment interest on those benefits.





**SECOND CLAIM FOR RELIEF**

For Breach of the Implied Covenant of Good Faith and Fair Dealing

(Dr. Zehtab Against Principal and Does 1 through 10)

59.     Dr. Zehtab incorporates by reference each and every allegation set forth in each of the foregoing paragraphs, as though fully set forth herein.

60.     Principal's denial of Dr. Zehtab's claims for payment of LTD and Overhead Expense benefits was unreasonable and without proper cause.

61.     No reasonable dispute exists that Dr. Zehtab's medical condition, including bilateral wrist tenosynovitis, arm pain and numbness and tingling in his arms and fingers, prevents him from returning to work in his usual occupation. However, rather than reviewing his medical and occupational records and reaching the proper conclusion that Dr. Zehtab cannot perform the substantial and material duties of his own occupation, Principal decided to deny his claim for LTD and Overhead Expense benefits without proper cause and in bad faith.

62.     Each and every agreement in California, including the Policies, contains an implied covenant of good faith and fair dealing.  *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979).  That covenant required Principal to, among other things: refrain from acting in any way that could unreasonably jeopardize, impair or interfere with the rights of Dr. Zehtab to receive the benefits of the contract, including his disability benefits; properly investigate the claim; not withhold or delay paying Policy benefits unreasonably or without proper cause; act reasonably in handling, processing and paying the claim while considering the totality of the circumstances; and give at least as much consideration to the insured's

interests as it does to its own.  Principal violated this covenant when it improperly and unreasonably denied Dr. Zehtab's claims for benefits.

63.    Principal violated and breached this implied covenant and breached its duty of good faith and fair dealing owed to Dr. Zehtab by the following, among other, conduct:

(a)    Unreasonable and bad-faith failure to approve and pay Dr. Zehtab the benefits he was due under the Policies.  Principal paid him nothing and unreasonably denied the claims in full.

(b)    Unreasonable and bad-faith delay in making a claims decision.

(c)    Unreasonable and bad-faith requests for information from Dr. Zehtab that had been previously sought and obtained from him, requests for information that were irrelevant/immaterial to the claim and requests for information which could and should have been requested long before they were finally requested by Principal, thus contributing to the unreasonable delay in handling the claims.

(d)    Unreasonable and bad-faith failure to investigate Dr. Zehtab's entitlement to payment of the submitted claims.  A claim investigation must thoroughly investigate all the possible bases that might support an insured's claim, and a trier of fact may find that an insurer acted unreasonably if it ignored available evidence that supports the claim.  *Wilson v. 21st Century Ins. Co.,* 42 Cal.4th 713, 721 (2007); *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.,* 78 Cal.App.4th 847, 879-80 (2000) (the adequacy of an insurer's investigation is one of the most critical factors in determining whether an insurer acted in good faith).

(e)    Failing to conduct a thorough investigation and thus breaching the implied covenant (*see Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 996 (9th Cir. 2001)), as evidenced by the above-described conduct and also because it: (1) failed to interview necessary witnesses (*see Downey Sav. & Loan Ass'n v. Ohio Cas. Ins. Co.,* 189 Cal.App.3d 1072, 1084 (1987)); (2) failed to consult with medical experts as was appropriate in this case, instead unreasonably opting to rely on purely "paper reviewing" medical consultants(*see Wilson v. 21st*



*Century Ins. Co.*, 42 Cal.4th 713, 724 (2007)) and *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal.App.4th 1617, 1624-1625 (1996) (failure to consult with insurer's own doctor or treating physician); and (3) failed to investigate beyond facts and coverage theories asserted by the insured (*see Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1072 (2007) (insurer must "fully inquire into possible bases that might support the insured's claim"), among other things.

(f) Inadequate communication with Dr. Zehtab regarding what information was needed to support the claims. *See Delgado v. Heritage Life Ins. Co.*, 157 Cal.App.3d 262, 278 (1984).

(g) Conducting a biased claims examination, using biased claims examiners, supervisors and medical reviewers, all of whom conducted a cursory examination of the medical documents. *See Barbour v. UNUM Life Ins. Co.*, 2011 U.S. Dist. LEXIS 91060 (S.D. Cal. 2011) (relying on in-house experts' analysis and failing to view the evidence in the light most favorable to the insured was ruled to be potentially unreasonable claims handling and cannot create a "genuine dispute" as to coverage sufficient to absolve the insurer of bad-faith liability).

(h) Failing to conduct an independent medical examination of Dr. Zehtab, opting instead to rely solely on inadequate and biased in-house medical professionals. Principal's conduct evidences completely biased, unreasonable, bad-faith and improper claims handling. *See Phillips v. Clark County School District*, 2012 U.S. Dist. LEXIS 141633, 2012 WL 4604466 (D. Nev. Sept. 30, 2012) (An insurance provider's act in conducting a "pure paper" review, rather than an independent medical examination, constitutes "an indicator of bias.").

(i) Failing to consider and apply the proper standard of disability under California law and ignoring the credible objective and subjective evidence of Dr. Zehtab's disability that rendered him unable to perform the substantial and material acts necessary for the prosecution of his business or occupation in the usual or customary way and with reasonable continuity. *See Hangarter, supra*, 373 F.3d at 1006.

(j) Violating many provisions of the Unfair Claims Settlement Practices Act (*see* California Insurance Code Section 790.03(h))

Case No.:



and the corresponding California Fair Claims Settlement Practices regulations (*see* 10 Cal. Code Regs., Section 2695.1 *et seq.*, which is further evidence that Principal breached the implied covenant. *See Jordan*, 148 Cal.App.4th at 1078 ("This is a *proper* use of evidence of an insurer's violations of the statute and the corresponding regulations.") (Italics in original).

(k)   Unreasonable and bad-faith failure to give Dr. Zehtab at least as much consideration to his interests as it did to its own interests. *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818 (1979).

64.   Principal's malicious and unreasonable conduct caused Dr. Zehtab to suffer emotional and financial distress.  He could not work full time to help support himself, and the improper denial of the Policies' benefits placed a great financial burden on him.  Dr. Zehtab purchased the Policies precisely in case he became disabled so as to provide him the necessary financial assistance he needed.  Yet Principal unreasonably denied his claims in order to protect its own financial interests at the expense of Dr. Zehtab's interests when he needed the Policies' benefits to support himself and his family, causing him worry, anxiety, mental anguish and serious emotional suffering and distress.

65.   By refusing to provide Dr. Zehtab the benefits to which he is entitled and to which he relies on to live, Principal has also caused Dr. Zehtab to suffer financial damages.

66.   As a proximate result of Principal's unreasonable claims handling and decision to deny Dr. Zehtab's claims for benefits under the Policies, he had to retain lawyers to represent him.  He has incurred attorneys' fees and costs, and will continue to do so, to file this litigation and otherwise pursue the benefits he is entitled to receive from Principal under the Policies, but which Principal has unreasonably refused to provide.

Case No.:



67.     Principal's conduct, as alleged above, was undertaken with a malicious intent to deprive Dr. Zehtab of his legal right to disability insurance benefits due under the Policies and otherwise causing him injury.  The acts were despicable, malicious, oppressive and/or fraudulent and subjected Dr. Zehtab to a cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

68.     Principal's officers, directors and/or managing agents were personally involved in the reprehensible conduct that warrants punitive damages, and/or they authorized or ratified this conduct by its employees.

69.     As a direct and proximate result of Principal's conduct as alleged herein, Dr. Zehtab has suffered and will continue to suffer monetary and non-monetary damages, in an amount to be determined at trial, but which exceed $75,000, including but not limited to loss of his disability insurance and Overhead Expense benefits, pre-judgment interest on those benefits at the legal rate, consequential damages, emotional distress damages and attorneys' fees, costs and expenses incurred pursuing the Policies' benefits under *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) and its progeny.

### **PRAYER**

WHEREFORE, Dr. Zehtab prays for judgment as follows:

1. For past-due and future benefits due under the Policies;
2. For compensatory and consequential damages;
3. For emotional distress damages;
4. For punitive damages;
5. For pre-judgment and post-judgment interest;

Case No.:



1

6.  For attorneys' fees and costs of suit; and

2

7.  For such other and further relief as the Court deems just and proper.

3

4

Dated:  August 27, 2019                    MCKENNON LAW GROUP

5

6

By:

7

ROBERT J. McKENNON
ANDREA SOLIZ

8

Attorneys for Plaintiff Hamid Zehtab

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-29-




## **REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury.

Dated:  August 27, 2019                           McKENNON LAW GROUP

By: _____
ROBERT J. McKENNON
ANDREA SOLIZ
Attorneys for Plaintiff Hamid Zehtab

-30-

